# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 112

*October Term, A.D. 2024*

__November 6, 2024__

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,
Petitioner,

V.

WILLIAM K. STRUEMKE, WSB #
7-4619,

Respondent.

D-19-0001

## ORDER TRANSFERRING ATTORNEY FROM DISABILITY INACTIVE STATUS TO ACTIVE STATUS AND ORDER OF 30 MONTH SUSPENSION

[¶ 1]  **This matter** came before the Court upon the Board of Professional Responsibility's Report and Recommendation that Respondent be Reinstated to Active Status and for Issuance of an Order of Disciplinary Suspension for 30 Months Effective January 30, 2019, filed herein October 23, 2024. The Report and Recommendation is governed by Rule 12 of the Wyoming Rules of Disciplinary Procedure, which governs stipulated discipline, and Rule 23, which governs reinstatement after transfer to disability inactive status. Now, after a careful review of the Report and Recommendation and the file, the Court finds the Report and Recommendation should be approved, confirmed and adopted by the Court, and that William K. Struemke should be reinstated from disability inactive status to active status. The Court also finds that Mr. Struemke should be suspended from the practice of law for 30 months, with that suspension effective July 30, 2019, the date his membership with the Wyoming State Bar was transferred to disability inactive status.

[¶ 2]  While not discussed in the Report and Recommendation, there is another matter that must be addressed. On January 17, 2019, Mr. Struemke was suspended from the practice of law for failure to timely pay the Wyoming State Bar's 2018-2019 annual license fee.

He has not resolved that suspension by filing a petition for reinstatement with this Court and paying the applicable $300 fee. Wyoming State Bar Bylaws, Art. I, § 5(m); See *Bd. of Pro. Resp., Wyoming State Bar v. Elsom*, 2010 WY 50, 234 P.3d 1191 (Wyo. 2010). Nevertheless, given the Board of Professional Responsibility's finding that Mr. Struemke is "current on payment of annual license fees," this Court finds Mr. Struemke should be reinstated from his suspension for failure to pay the annual license fee without being required to file a petition for reinstatement, so long as he pays the applicable $300 fee within 30 days of this order. (Report, ¶ 86) It is, therefore,

[¶ 3]  **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation that Respondent be Reinstated to Active Status and for Issuance of an Order of Disciplinary Suspension for 30 Months Effective January 30, 2019, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 4]  **ADJUDGED AND ORDERED** that, effective immediately, Respondent William K. Struemke's membership in the Wyoming State Bar shall be transferred from disability inactive status to active status.  W.R.D.P. 23; and it is further

[¶ 5]  **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation, Respondent William K. Struemke shall be, and hereby is, suspended from the practice of law for 30 months, with the period of suspension to begin January 30, 2019; and it is further

[¶ 6] **ORDERED** that, because 30 months has passed since the effective date of the disciplinary suspension, the period of that suspension has expired. In accord with the Report and Recommendation, this Court agrees Mr. Struemke shall not be required to petition for reinstatement from the disciplinary suspension. W.R.D.P. 22; and it is further

[¶ 7] **ADJUDGED AND ORDERED** that Mr. Struemke is hereby reinstated from his suspension for failure to pay with the annual license fee. However, he shall pay this Court the applicable $300 reinstatement fee on or before December 6, 2024. Wyoming State Bar Bylaws, Art. I, § 5(m) & (n). If Mr. Struemke fails to make that payment in the time allotted, this Court will reimpose the suspension for failure to pay with the annual license fee; and it is further

[¶ 8] **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Mr. Struemke shall reimburse the Wyoming State Bar the amount of $50.00, which represents the costs incurred in handling this matter, as well as pay administrative fees of $2,250.00. Mr. Struemke shall pay the total amount of $2,300.00 to the Wyoming State Bar on or before January 6, 2025. If Mr. Struemke fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶ 9]   **ORDERED** that the Wyoming State Bar may issue the press release contained in the Report and Recommendation that Respondent be Reinstated to Active Status and for Issuance of an Order of Disciplinary Suspension for 30 Months Effective January 30, 2019; and it is further

[¶ 10] **ORDERED** that the Clerk of this Court shall docket this Order Transferring Attorney from Disability Inactive Status to Active Status and Order of 30 Month Suspension, along with the incorporated Report and Recommendation that Respondent be Reinstated to Active Status and for Issuance of an Order of Disciplinary Suspension for 30 Months Effective January 30, 2019 as a matter coming regularly before this Court as a public record; and it is further

[¶ 11] **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order Transferring Attorney from Disability Inactive Status to Active Status and Order of 30 Month Suspension, along with the incorporated Report and Recommendation that Respondent be Reinstated to Active Status and for Issuance of an Order of Disciplinary Suspension for 30 Months Effective January 30, 2019 shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶ 12] **ORDERED** that the Clerk of this Court cause a copy of this Order Transferring Attorney from Disability Inactive Status to Active Status and Order of 30 Month Suspension to be served on Respondent William K. Struemke.

**DATED** this 6th day of November, 2024.

BY THE COURT:*

/s/

**KATE M. FOX**
**Chief Justice**

*Justice Jarosh took no part in the consideration of this matter.

BEFORE THE SUPREME COURT

STATE OF WYOMING

| | | |
|---|---|---|
| *In the matter of* | ) | |
| *William K. Struemke* | ) | *Case Nos. WSB 2017-055, 2017 092,* |
| *WSB # 7-4619,* | ) | *& 2017-100* |
| | ) | *WSC No. D-19-0001* |
| *Respondent.* | ) | |

IN THE SUPREME COURT
STATE OF WYOMING
FILED

OCT 23 2024

SHAWNA GOETZ, CLERK

by DEPUTY

Report and Recommendation that Respondent be
Reinstated to Active Status and for Issuance of an Order of
Disciplinary Suspension for 30 Months Effective January 30, 2019

THIS MATTER came before a Review Panel ("Panel") of the Board of Professional Responsibility ("BPR") on September 23, 2024, for consideration of the Parties' Stipulated Motion for Reinstatement of Respondent and for 30-month Disciplinary Suspension Effective January 30, 2019. The Panel, which is comprised of Cheyenne attorney Bradley T. Cave, Casper attorney John A. Masterson, and non-lawyer member Alisha Rone of Casper, has considered all evidence submitted, the arguments of counsel, the Wyoming Rules of Professional Conduct, and the ABA Sanction Standards; having fully deliberated, and determined by unanimous vote that Respondent has established by clear and convincing evidence that he is fit to return to active status and that an order of disciplinary suspension of Respondent William K. Struemke for a period of 30 months effective January 30, 2019, should be entered.

More particularly, being fully advised in the premises, the Board FINDS, CONCLUDES AND RECOMMENDS as follows:

Procedural Background

1.      Special Bar Counsel was appointed by the Review and Oversight Committee (ROC) to investigate three complaints received by the Office of Bar Counsel in mid-2017.

Following investigation, Special Bar Counsel requested authority to file formal charges, and the ROC found probable cause to proceed. Three formal charges were filed and served. Respondent filed answers. The three cases were consolidated for all purposes, and the BPR scheduled a one-week evidentiary hearing in mid-July 2018.

2. During June 2018 the Parties negotiated a stipulated resolution of the formal charges. The Respondent was presented with an Affidavit of Conditional Admission of Misconduct which he signed. The parties then filed a Motion to Approve Stipulated Discipline of Suspension and for Report and Recommendation of Same together with Respondent's Affidavit of Conditional Admission of Misconduct and Agreement to Discipline of Suspension.[1]

3. On June 22, 2018, a quorum of the BPR convened a hearing by telephone conference call to consider the proposed stipulated discipline. During that hearing Respondent struggled emotionally when responding to questions from Board members.

4. After the Board deliberated, the Board Chair advised counsel that the BPR would consider approval of the proposed stipulated discipline if the Parties could agree upon additional terms to require Respondent to obtain an evaluation of his emotional or mental health and to follow any treatment recommendations as a condition of future reinstatement.

5. The parties conferred and reached a further stipulation. Respondent agreed to undergo a mental/emotional health evaluation and that he would voluntarily cease the practice of law pending such evaluation. The Bar agreed to pay for the evaluation. The Parties stipulated that the Chair should order an evaluation as authorized in Rule 20(d), W.R.D.P. The Parties agreed on an appropriate mental health professional to conduct the evaluation.

---

[1] Respondent's admissions of misconduct are conditional under Rule 12(d), W.R.D.P. which provides that the admissions may not be used against the respondent if stipulated discipline is rejected by the Court.

6.       Following the evaluation, the mental health professional delivered her Report of Psychological Evaluation, finding that Respondent's mental health challenges were of such an extent that Respondent was unable to fulfill professional responsibilities competently. After considering the report, and extensive discussions between the Parties, the Parties filed a joint motion to transfer Respondent to disability inactive status. The parties also reaffirmed the prior stipulation to a 30-month disciplinary suspension and requested that publication of the order of suspension be deferred until Respondent's return to active status. Both stipulations were supported by Respondent's affidavits providing the factual basis for the requested action.

7.       The BPR recommended that the Court enter an order transferring Respondent to Disability Inactive Status under Rule 20, W.R.D.P., requiring that Respondent comply fully with Rule 21, W.R.D.P., and requiring that in any future reinstatement application, in addition to the requirements of Rule 23, W.R.D.P., Respondent must submit proof to Bar Counsel that he has passed the Multistate Professional Responsibility Exam (MPRE) and an accredited law school or college writing skills class of at least one semester. The BPR also recommended that the Court impose a 30-month disciplinary suspension but that publication of the discipline order be deferred until Respondent's return to active status.

8.       On January 30, 2019, the Court issued an order transferring Respondent to disability inactive status. The order provided that, if Respondent applies for reinstatement prior to his membership being terminated pursuant to Rule 23(f) of the Wyoming Rules of Disciplinary Procedure, Respondent must also submit proof that he has passed (1) the Multistate Professional Responsibility Exam (MPRE) and (2) an accredited college or law school writing class of at least one semester.

9. The order was silent as to the BPR's recommendation for a 30-month disciplinary suspension of Respondent. Accordingly, that matter remains unadjudicated.

## Findings of Fact

10. Respondent was admitted to practice in 2010. He worked successfully for about five years in deputy county attorney positions in Thermopolis and Cody before he entered private practice in Cody in 2015 as the managing member of Serviam Legal Services, LLC.

11. In 2018, for the purpose of resolving three pending disciplinary proceedings by stipulation, Respondent conditionally admitted to multiple violations of the Wyoming Rules of Professional Responsibility in the three pending cases. Respondent's conditional admission of such violations is more fully set forth in the following paragraphs.

Case No. 2017-055

12. In early 2016, Respondent undertook to represent a client in a lawsuit to recover for injuries and property damage he sustained after his vehicle was struck head-on by a wheel that came off a Dodge truck traveling down a highway in the opposite direction.

13. On March 26, 2016, Respondent filed a Verified Complaint on behalf of the client in the Fifth Judicial District Court in Park County alleging that the truck driver and his employer/truck owner were liable for negligent operation of an unsafe vehicle.

14. Respondent did not serve plaintiff's initial disclosures under Rule 26 until September 8, 2016. He admits that he failed to make initial disclosures within the deadline established in Rule 26, W.R.C.P. and that his delay in serving initial disclosures was a violation of his obligation of diligence under Rule 1.3, W.R.P.C.

15. Defendants served Respondent with document requests and interrogatories directed to the plaintiff on May 13, 2016. Respondent conditionally admits that he failed to

4

respond timely in violation of Rules 33 and 34, W.R.C.P. and that this failure was a violation of his duty of diligence under Rule 1.3, W.R.P.C.

16. Respondent's answers served August 28, 2016, to defendants' document requests and interrogatories were not in compliance with Rules 33 and 34, W.R.C.P. He failed to sign the discovery responses, failed to separately state objections and the grounds for objections, and failed to require his client to sign the interrogatory answers under oath. He did not obtain or serve a verified signature page even after he received emails from defense counsel asking for the answers to be signed and verified. He failed to assure that his client's answers were complete and fully responsive. He conditionally admits that his failure to follow the requirements of Rules 33 and 34 in responding to defendants' document requests and interrogatories was in violation of his obligations of competence and diligence under Rules 1.1 and 1.3, W.R.P.C., his obligation to expedite litigation under Rule 3.2, W.R.P.C., and his obligation to provide answers to proper discovery requests under Rule 3.4(d), W.R.P.C.

17. Throughout the lawsuit Respondent failed to obtain from the plaintiff or his care providers evidence of plaintiff's ongoing medical care and resulting expenses. As a result of his lack of diligence Respondent did not disclose adequate computations and evidence of medical expenses incurred by plaintiff to defendants' counsel. By the time the case settled on May 23, 2017, Respondent still had not obtained evidence of medical expenses and had not supplemented either the plaintiff's Rule 26 disclosures or the plaintiff's interrogatory answers and document responses. He conditionally admits that he violated duties of disclosure and supplementation under Rules 26, 33 and 34, W.R.C.P., and that he failed to competently and diligently prepare and disclose proof of plaintiff's damages in violation of his obligations under Rules 1.1 and 1.3, W.R.P.C.

5

18.    During a scheduling conference on August 25, 2016, Judge Cranfill directed Respondent to prepare the case scheduling order. He was obligated under Rule 58, W.R.C.P. to file a proposed order within fourteen days but failed to do so. The court's judicial assistant reminded Respondent by an email in mid-September 2016 that he was supposed to have filed the scheduling order. He promptly delivered a proposed order to defense counsel for review, but still failed to file any proposed order with the court. Respondent conditionally admits that it was his responsibility to timely file the order with the court, with or without cooperation of defense counsel, that he failed to meet that responsibility, that he violated the Court's order directing him to file the order and Rule 58, W.R.C.P. and that by this conduct violated his obligation to practice diligently under Rule 1.3, W.R.P.C.

19.    On April 6, 2017, defendants served Respondent with Requests for Admissions and Interrogatories of Defendants to Plaintiff. Plaintiff's answers to this written discovery were due on or about May 9, 2017. Respondent conditionally admits that he failed to serve any answers to this discovery, in violation of Rules 33 and 36, W.R.C.P., and that his conduct constituted a failure to act diligently as required under Rule 1.3, W.R.P.C. and a failure to respond to a proper discovery request as required under Rule 3.4(d), W.R.P.C.

20.    After the court's judicial assistant inquired again and defense counsel emailed a copy of the proposed scheduling order that Respondent should have filed in October 2016, the Court entered the case scheduling order on May 7, 2017. The scheduling order required the parties to each disclose to the opposing party their "Final Fact Witnesses and any exhibits" on or before April 15, 2017. Respondent failed to comply with that order. He received the defendants' lists of witnesses and exhibits served on April 14, 2017, and electronic copies of the defendants' labeled trial exhibits, but he still failed to prepare and serve any pretrial lists of plaintiff's

6

witnesses or exhibits or to provide defense counsel with copies of any plaintiff's trial exhibits. He failed to cure by delivering lists of witnesses and exhibits or copies of plaintiff's trial exhibits before the case settled on May 23, 2017. Respondent conditionally admits that his failure to serve final lists of evidence and copies of plaintiff's trial exhibits was in violation of the court's scheduling order and Rule 26, W.R.C.P. and also was a violation of (1) his obligation to practice competently under Rule 1.1, W.R.P.C., (2) his obligation to practice diligently under Rule 1.3, W.R.P.C., (3) his obligation to expedite litigation under Rule 3.2, W.R.P.C., and (4) his obligation to not knowingly fail to comply with a court order or rule under Rule 3.4(c), W.R.P.C.

21.     Respondent was served with defendants' April 26, 2017, motion to dismiss for lack of evidence on the necessary element of damages and his failure to serve any final list of witnesses or exhibits by the April 15, 2017 deadline. A response by plaintiff to this motion to dismiss was due under Rule 6(c)(1), W.R.C.P. by no later than May 20, 2017 (20 days after the motion was served). Respondent failed to file any response, and he conditionally admits that this failure to respond to a potentially case-dispositive motion was a violation of his obligations of competence under Rule 1.1, W.R.P.C. and of diligence under Rule 1.3, W.R.P.C.

22.     A jury trial was scheduled to commence June 5, 2017. On May 10, 2017, an assistant working under Respondent's remote supervision served a "Plaintiff's Amended Complaint" by mail to defense counsel. This service was defective because Respondent had not first obtained leave of court to amend as required under Rule 15, W.R.C.P. His assistant's attempted filing of the amended complaint was refused by the Clerk because there was no court order granting leave to amend. The amended complaint bore Respondent's electronic signature. Although Respondent asserts that his intent was to have his office send a communication to defense counsel that the amendment was only a proposed pleading and was subject to obtaining leave of

7

court, no such communication was transmitted. Respondent conditionally admits that the amended complaint was served in violation of Rule 15, W.R.C.P. and in violation of his obligations of competence and diligence under Rules 1.1 and 1.3, W.R.P.C.

23.     Respondent's associate filed a May 19, 2017, pretrial memorandum on his behalf. Plaintiff's lists of witnesses and trial exhibits in the pretrial memorandum were not complete. Trial exhibits were described as "speculative" and "anticipated" and Respondent's associate stated in the memo that plaintiff was waiting for records the associate had only recently requested from third party care providers. Respondent conditionally admits that the Pretrial Memo prepared and filed under his supervision was not competently prepared and was filed in violation of his obligations of competence and diligence under Rules 1.1 and 1.3, W.R.P.C.

24.     While Respondent was overseas serving in the Wyoming National Guard, he approved for filing over his signature a May 10, 2017, document titled "Objections to Interrogatories and Individuals Presented at Depositions." In the prayer for relief he asked the court to order sanctions against the defendants' attorneys, including that the defendants "should be prohibited from using any evidence at trial" and that the court should "find that the Defendant [] was using his cell phone at the time of the accident based on the deliberate concealment of phone records." Respondent conditionally admits this "Objections, etc." document filed over his name included statements of fact to the court that were not accurate, including the following:

   a. He accused defense counsel of failing to file the scheduling order when it was his responsibility, not defense counsel's, to file the order.

   b. He accused defense counsel of deliberate concealment of defendant's cell phone records without advising the court that i) defendants' counsel had informed Respondent the phone records were not available to defendant, and ii) Respondent had responded to defense counsel that he would subpoena the phone records from a third party provider, then iii) he had failed to issue or serve such a subpoena. Respondent had suspicions that defendants or their counsel had possession of phone records they were refusing to produce, but he

8

had no actual evidence to support an accusation that defense counsel were deliberately concealing documents, and he admits that he should not have made that accusation.

    c. Respondent accused the defendants of producing a witness for deposition who did not know specific information about the accident. Respondent failed to inform the court that he had asked the defendant only to designate a company representative who could testify on the subject of vehicle maintenance schedules, that the witness was designated as a company representative only on that subject, and that Respondent had never asked for the deposition of the company president after he learned that the president was more likely to have knowledge of the accident.

Respondent conditionally admits that in the "Objections, etc." document, he provided the court with no rule, case law or other basis in law for the Court to impose the sanctions relief he was requesting and no analysis of why the facts set out in the document would warrant the sanctions relief requested. Respondent conditionally admits that the "Objections, etc." was filed in violation of his obligations under Rule 3.1, W.R.P.C. to have a basis in fact and a good faith basis in law for assertions and claims made to the court. He conditionally admits that this document was filed for purposes of seeking delay because he was not prepared for trial. He admits that by filing this document he violated his affirmative obligation to expedite litigation under Rule 3.2, W.R.P.C.

25. Also on May 10, 2017, Respondent's associate filed over his signature a "Motion to Continue Based on New Information." Respondent conditionally admits that this Motion to Continue contained inaccurate statements of fact, including the following:

    a. Respondent represented to the court that there was newly discovered medical information regarding the plaintiff's condition when there had been no recent change in plaintiff's medical condition and he had not disclosed any new medical information to defense counsel.

    b. Respondent represented to the court that new information had been disclosed recently about the location of the plaintiff's accident vehicle, specifically that the plaintiff's car totaled in the accident had been abandoned by Defendants' insurer in a storage lot. He did not inform the Court, however, that defense

9

counsel had advised Respondent of the location of the vehicle in the storage lot several months earlier. This was not new information.

c. He represented to the court that the insurance company for the defendant had recently stated an additional defendant should be added by an amendment to the complaint, but he failed to inform the court that the insurance company had made this same statement to Respondent at the inception of the case a year earlier, that he had known the identity of the third party for more than six months, and that he had elected not to move earlier to amend to join that party.

Respondent conditionally admits that the motion to continue was filed in violation of his obligations under Rule 3.1, W.R.P.C. to have a basis in fact and a good faith basis in law for assertions and claims made to the court. He conditionally admits that this document was filed not because he had meritorious reasons to delay the trial, but for purposes of seeking delay because he was not prepared for trial. He conditionally admits that by filing this document he violated his affirmative obligation to expedite litigation under Rule 3.2, W.R.P.C.

26.     Respondent conditionally admits that during the course of the lawsuit he did not exercise reasonable oversight of persons working under his supervision to assure proper compliance with service and filing rules of the Court. Important papers filed shortly before trial, the "Objections, etc." and the "Motion to Continue, etc.," were placed in the mail to defense counsel without postage. When returned to Respondent's office for lack of postage, the same documents were re-mailed by a new associate with postage added but without any phone call or email to defense counsel to alert them to the failure of service of these time-sensitive documents. Respondent later filed corrected certificates of service to take responsibility for this service error. A motion that Respondent signed and filed on April 14, 2017, incorrectly stated that he had signed it on March 29, 2017, and the certificate of service certified incorrectly that service was made on March 29, 2017, when it was not served until April 14, 2017. Plaintiff's initial Rule 26 disclosures were filed with the Court on September 8, 2017, contrary to Rule 5(d)(1) W.R.C.P.

10

which states that such disclosures "must not be filed until they are used in the proceeding or the court orders filing." Respondent's office served and tried to file an amended complaint without first seeking leave of court to amend as required under Rule 15, W.R.C.P. Respondent conditionally admits that there were too many service and filing errors in the short history of this lawsuit and that he did not fulfill his obligations under Rule 1.1, W.R.P.C. to assure adequate training and oversight of the persons working under his supervision.

27. Respondent agrees that taken together the violations described above show that he did not competently and diligently prepare the case for trial. In addition, he conditionally admits that he did not seek or designate expert opinions needed regarding plaintiff's ongoing and future medical needs and expenses and that he did not timely seek to join as a defendant the third-party service provider responsible to maintain the wheel on the truck. He acknowledges that timely work to designate a medical expert and to join the third party would have enhanced the value of his client's case.

28. Respondent asserts, as mitigating circumstances, that the client was a long-time family acquaintance, that he undertook to help him seek recovery for his injuries after Respondent believed an initial offer from the defendants' insurance company was too low, and in the end the client recovered through a settlement a higher amount than he had been offered pre-filing and seemed satisfied with the case outcome. Respondent also states that he did not charge the client any fee for his services. Further, Respondent states that the client did not have the funds to be able to hire a medical expert in his case.

29. Respondent asserts, as mitigating circumstances, that the lawsuit events happened during his first few years of private practice after about five years of service in deputy county

11

attorney positions. He states that he realizes that he lacked knowledge and experience needed to manage his time and his office properly.

30.     Respondent asserts, as mitigating circumstances, that some of these events happened while he was deployed for service in the Wyoming National Guard. Also, during the events at issue he was serving as a volunteer, elected member of the Board of Trustees of Park County School District No. 6.

Case No. 2017-092 - Juvenile Appeal

31.     Starting in 2016, Respondent represented parents "DW" and "KW" in a juvenile case regarding their minor child "BFW" (hereafter "Juvenile Case").[2] BFW was a six-year old special needs student in elementary school in Park County School District No. 1. Employees of Park County School District No. 1 reported suspected child abuse or neglect to law enforcement. The child was initially removed from his home while a juvenile case proceeded over the allegations of abuse or neglect. In a May 2016 jury trial in juvenile court, the jury found that the parents had not abused BFW but were negligent in their care or supervision of him. The district court, Judge Cranfill, entered a final order to implement the jury findings. Respondent filed a notice of appeal to the Wyoming Supreme Court on behalf of DW and KW seeking to overturn the final judgment of neglect.

32.     At the conclusion of the appeal the Wyoming Supreme Court published its decision affirming the trial court judgment of neglect. *In the Interest of: BW, a Minor Child, DW and KW v. State of Wyoming*, 2017 WY 64, decided June 1, 2017 (hereafter the "Juvenile Case"). In its opinion the Wyoming Supreme Court noted that Respondent had failed to timely file an Appellants' Brief, the appeal had been dismissed as a result, and the court had granted Respondent's

---

[2] All facts set out herein regarding the Juvenile Case or its participants have already been publicly disclosed.

12

petition to reinstate the appeal based on a finding of excusable neglect. However, upon review of the Appellants' Brief filed after the appeal was reinstated, the Court found that the brief Respondent filed was "unintelligible" and that review of the brief "uncovered no cogent argument supported by legal authority," and "[c]onsequently, ... summarily affirm[ed] the Order on Adjudicated Hearing entered by the district court." 2017 WY 64 at ¶6.

33.     Respondent conditionally admits that, through neglect, he failed to timely file an Appellants' Brief in the Juvenile Case, and did not exercise reasonable care to monitor the progress of the appeal or to inquire about deadlines and plan accordingly. After Respondent had prepared a draft Appellants' Brief, he did not exercise reasonable care to make sure he or his assistant knew how to log in and upload the brief by the filing deadline. As a result, the Appellants' Brief he had drafted was filed a few minutes after the midnight deadline resulting in the Clerk's dismissal of the appeal. By a 3-2 vote of the justices, the Supreme Court found that Respondent's neglect was excusable and granted his petition to reinstate the appeal. However, the Court ordered Respondent to file the Appellants' Brief in the same form, without further revisions, that his assistant had uploaded shortly after midnight on the due date.

34.     Respondent conditionally admits that the Appellants' Brief in the form he had prepared it as of the filing deadline, and as he filed it after reinstatement, was not competently prepared both procedurally and in substance. He had failed to comply with several requirements of Rule 7.01, W.R.A.P. He omitted any Statement of Facts. He failed to cite to any designated record. He failed to state the standard of review applicable to each separate issue. He failed to attach an Appendix that contained the court orders challenged in the appeal. He also failed to designate any record on appeal of the Juvenile Case as required by Rule 3.05(b), W.R.A.P. The Wyoming Supreme Court requested transmission of the record on appeal and learned from the

13

district court that Respondent had failed to file any designation of record. Acting on its own accord, the Wyoming Supreme Court issued an order that sanctioned Respondent with a fine of $50 for this violation of Rule 3.05(b) and ordered him to designate a record within ten days. He paid the fine and filed a designation of record. Respondent conditionally admits that the Wyoming Supreme Court correctly described the Appellants' Brief he filed as lacking cogent argument supported by legal authority. For example: he argued without any legal authority that the district court erred by not requiring the State to file a Bill of Particulars even though that remedy is available only in criminal cases as a substitute for discovery, whereas the juvenile matter was a civil proceeding in which civil discovery rules were available for Respondent's use. He argued that the district court should have ordered a mistrial based on a prejudicial non-responsive comment volunteered by a witness during the jury trial, but Respondent had not requested a mistrial in the district court. He had block-copied a part of the Appellants' Brief from an unsuccessful pretrial motion but then failed to edit that portion in the filed brief. Respondent states that the poor quality of the brief resulted in part from his confusion about when the brief was due. He believes that he had not seen a copy of the Clerk's docketing letter even though one was mailed by the Clerk and received by lawyers for the other party. He had worked on a rough draft of a brief while unsure about the deadline. By the time he finally inquired of the Clerk's office about the deadline, there was too little time remaining to prepare a competent brief, so he had to file the rough draft in such poor form just to meet the deadline. Respondent conditionally admits that it was his responsibility to monitor the appeal, including to know the briefing deadline, and to plan accordingly. Respondent conditionally admits that his failure to timely and competently prepare an Appellants' Brief violated Rules 1.1 (competence) and 1.3 (diligence), W.R.P.C.

14

35. Respondent conditionally admits that his clients suffered injury as a result of this misconduct. His clients' appeal was not decided against them on the merits. Rather, the district court's dismissal order was summarily affirmed because the brief Respondent filed failed to present a cogent argument with supporting legal authority.

36. By a letter dated November 21, 2017, Special Bar Counsel provided notice to Respondent under Disciplinary Rule 10(c) that based upon the Wyoming Supreme Court's published opinion, he was investigating Respondent for potential violations of Rules 1.1 (competence) and 1.3 (diligence). Special Bar Counsel asked Respondent to respond and to provide him requested documents by December 20, 2017. Respondent conditionally admits that he never provided Special Bar Counsel with any written response to his November 21, 2017, letter, did not provide the documents requested, and that he thus failed to respond to a lawful demand for information from Special Bar Counsel, a disciplinary authority, in violation of Rule 8.1, W.R.P.C, and, failed to respond without good cause to a request by Special Bar Counsel in violation of Rule 8(a)(4), W.R.D.P.

Case No. 2017-092 – Conflicts of Interest in the Civil Lawsuit

37. During 2016 Respondent undertook to represent Dominic A. Whitham, Kimberly J. Whitham, and Benjamin F. Whitham. Dominic and Kimberly are the parents who were identified in the Juvenile Case as "DW" and "KW." Benjamin was the minor child of Dominic and Kimberly and identified in the Juvenile Case as "BFW."

38. Respondent advised the Whithams to pursue civil claims for damages against County School District No. 1 and three of its employees. He wrote a Notice of Claim that the Whithams submitted to the Park County School District No. 1 school district in February, 2017. After the school board voted to deny that claim, Respondent wrote and filed an April 5, 2017,

15

Verified Complaint captioned *Dominic A. Whitham, Kimberly J. Whitham, and Benjamin F. Whitham, plaintiffs v. Denise Feller, Kerri Boggio, Jerold Haire, and Park County School District #1, defendants,* Civil Action No. 28745, in the Fifth Judicial District Court for Park County (hereafter the "Civil Lawsuit").

39.     The Verified Complaint contained 30 tort claims asserted against the Park County School District No. 1 school district and three of its employees. Some of the claims asserted that the teacher and aide had conspired between one another and with law enforcement to submit false reports of suspected child abuse and neglect, which caused the minor child to be removed from his school and home while authorities investigated the reports.

40.     At the time Respondent took on representation of all three Whithams in the Civil Lawsuit, he was still defending the parents Dominic and Kimberly on their appeal to the Wyoming Supreme Court of the adverse judgment against them in the Juvenile Case that they had neglected Benjamin. In the Juvenile Case the interests of Benjamin were being represented by a Guardian Ad Litem appointed to represent Benjamin's best interests.

41.     Respondent conditionally admits that there was a significant risk that his representation of the minor child, Benjamin, in the Civil Lawsuit would be materially limited by his simultaneous representation of Dominic and Kimberly as parents in the Juvenile Case. He conditionally admits that there were both actual and potential conflicts of interests between the best interests of the parents, Dominic and Kimberly, and those of their minor child, Benjamin, when Respondent undertook the Civil Lawsuit. He realizes now that there were also potential conflicts foreseeable in the joint representation. If any of the claims he pleaded had been successful, liability limits under the Governmental Claims Act, or limited assets of the individual Defendants, would have resulted in insufficient funds available to satisfy all the damages claimed. He should

16

have realized that any settlement of claims in favor of the minor child would require a conservator or guardian to approve of and save for his use the minor child's proper share of any recovery.

42. Respondent conditionally admits that because Benjamin was a minor child in the midst of a conflict over whether his parents had acted in his best interests, consent to concurrent representation could only come from appointment of a non-parent conservator or guardian to represent Benjamin's best interests.

43. Respondent did not seek approval or consent in writing from the GAL appointed in the juvenile case before undertaking to represent Benjamin simultaneously with Dominic and Kimberly or before joining Benjamin as a plaintiff in the Civil Lawsuit. Respondent does not know if the GAL appointed for purposes of the juvenile case would have had authority to speak for Benjamin as to Respondent's engagement for the Civil Lawsuit. Before undertaking concurrent representation of Dominic, Kimberly and Benjamin to pursue the claims in the Civil Lawsuit, Respondent failed to obtain the appointment of any independent conservator or guardian ad litem to represent the best interests of the minor child, Benjamin. He relied, but under the circumstances should not have relied, on the parents, Dominic and Kimberly to direct the interests of their minor child, Benjamin.

44. Respondent did not obtain the fully informed consent of any legally competent representative of the interests of Benjamin in a writing signed by such a representative, to his simultaneous representation of Dominic Whitham, Kimberly Whitham, and Benjamin Whitham in the Civil Lawsuit or to the joinder of Benjamin as a named plaintiff in that lawsuit. He conditionally admits that his simultaneous representation of Benjamin with his parents, in the absence of informed written consent to the actual and potential conflicts of interest, was a violation of his obligations under Rule 1.7, W.R.P.C.

17

45.     During 2016 and 2017 Respondent was also serving as an elected member of the Board of Trustees of Park County School District No. 6. The claims he filed in the Civil Lawsuit sought to hold the other school district in the same county (Park County School District No. 1) liable in tort for injuries to a student as an exception to governmental immunity granted to school districts and other governmental entities in the Wyoming Governmental Claims Act.

46.     Respondent conditionally admits that there was a significant risk that his representation of all three plaintiffs in the Civil Lawsuit would be materially limited by his responsibilities as a Trustee to the third party, Park County School District No. 6. Although he informed the Whithams that he was a member of the Park County School District No. 6 Board of Trustees, he did not obtain their fully informed written consent to the conflicts of interest posed by his concurrent service as a Park County School District No. 6 Trustee, and he conditionally admits that his failure to do so was in violation of Rule 1.7, W.R.P.C.

47.     On October 12, 2017, Special Bar Counsel sent Respondent a letter to give notice that Respondent was under investigation for these potential violations of Rule 1.7. Special Bar Counsel advised Respondent that his disciplinary investigation would not be stayed pending conclusion of an ongoing appeal in the Civil Lawsuit because Special Bar Counsel was concerned that Respondent was continuing to represent the parents and minor child without having first resolved the conflicts of interest. Special Bar Counsel asked for a written response by November 1, 2017. On November 9, 2017, Special Bar Counsel sent Respondent an email advising that his failure to timely respond to his October 12, 2017, letter was in violation of his obligation to cooperate under the Rules of Professional Responsibility and the Rules of Disciplinary Procedure. By December 1, 2017, Respondent still had not responded to Special Bar Counsel's October 12, 2017, letter. Special Bar Counsel emailed Respondent again stating that he was in violation of

18

his professional obligation to cooperate with Special Bar Counsel. Respondent never replied to Special Bar Counsel's October 12, 2017, letter. Despite receipt of Special Bar Counsel's October 12 letter, Respondent continued to represent all three Whithams in the Civil Case appeal. He filed an Appellants' Brief on November 8, 2017, and represented all three Appellants in oral argument before the Wyoming Supreme Court in January 2018. Respondent conditionally admits that by not answering Special Bar Counsel's October 12, 2017, letter, and by not taking action to cure the conflicts of interest, he failed to respond to a lawful demand for information from Special Bar Counsel, a disciplinary authority, in violation of Rule 8.1, W.R.P.C, and failed to respond without good cause to a request by Special Bar Counsel in violation of Rule 8(a)(4), W.R.D.P.

Case No. 2017-092 – Disclosure of Identity of Minor Child

48.     In the Civil Lawsuit Verified Complaint, Respondent identified Benjamin F. Whitham by his full name in the case caption and in initial paragraphs of the pleading and also disclosed the full names and residence of his parents. After the first few paragraphs of the Verified Complaint, he referred to the minor child only by his initials. Respondent did not seek to file the Verified Complaint under seal. Respondent conditionally admits that under Rule 5.2 W.R.C.P., Rule 1 of the Rules Governing Redactions from Court Records, and W.S. §§14-3-337 and 439, he should have redacted identifying information to protect the identity of the minor child from public disclosure. He admits that the original Verified Complaint should have been filed under seal with the needed identifying information and that the publicly-filed copy should have referred to the plaintiffs by initials only without identifying information. Respondent was aware of the need to keep the minor child's identity confidential as a result of his several years of experience working on juvenile matters as a deputy county attorney. After the first few

19

paragraphs, the Verified Complaint shows that Respondent was working to edit an earlier draft so as to identify the minor child only by initials. He does not recall how or why he stopped short of completing such an edit or how he decided to leave identifying information in the case caption and initial paragraphs of allegations.

49.    On June 8, 2017, counsel for defendants wrote Respondent a letter in which he stated that Respondent had violated court rules by improperly disclosing the identity of the minor child in the Verified Complaint. The *Cody Enterprise* had published an article about the case. Defense counsel offered in his letter to meet with Respondent and the court to seek to seal the file in the matter in order to protect the minor child from further publicity. Respondent did not take defense counsel up on his offer, and did not take action to retract publication of the minor child's identity even after Mr. Copenhaver raised the question. Respondent conditionally admits that by publishing the full name and identity of the minor child in a publicly filed Verified Complaint and by not taking steps thereafter to seal the record, he violated Rule 3.4(c), W.R.P.C., which provides that a "lawyer shall not: . . .[k]nowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

Case No. 2017-100 – Pursuit of Claims Lacking Merit

50.    The Civil Lawsuit defendants filed a May 11, 2017, motion to dismiss under Rule 12(b)(6) for failure to state a claim urging the defendants were statutorily immune from suit under the Wyoming Governmental Claims Act. Respondent responded on behalf of plaintiffs arguing that the defendants were not immune in a response brief filed June 19, 2017. In the brief he argued: 1) that the school district was a public utility and therefore within one of the exceptions enumerated in the Act; 2) that the court should create judicial exceptions to the Act by balancing equities in cases where school employees allegedly violated school policies or engaged in

20

conduct that was criminal in nature; and 3) that the defendants were not immune under the Act because the employees' conduct was outside the employees' "scope of duties." Respondent focused on the second and third arguments during a June 23, 2017, hearing on the defendants' motion to dismiss on sovereign immunity grounds. On July 25, 2017, Judge Cranfill issued a Decision Letter that set out his reasoning for granting the Defendants' motion to dismiss.

51.     On July 31, 2017, Judge Cranfill wrote a letter to Bar Counsel to report his belief that the Civil Lawsuit claims Respondent had filed were frivolous and that the arguments he made to oppose dismissal of the claims were without a basis in law or a good faith argument for the extension, reversal or modification of existing law, in violation of Rule 3.1, W.R.P.C.

52.     On August 15, 2017, after Judge Cranfill had retired, the Honorable Bill Simpson, Judge Cranfill's replacement, signed a dismissal order with prejudice consistent with Judge Cranfill's July 25, 2017, decision letter. Respondent filed a Notice of Appeal, filed an Appellants' Brief and Reply Brief to the Wyoming Supreme Court, and presented oral argument to the Court in January 2018.

53.     On April 30, 2018, the Wyoming Supreme Court issued its unanimous opinion affirming the district court's order of dismissal with prejudice. *Whitham et al v. Feller, et al,* 2018 WY 43 (2018).

54.     One of Respondent's arguments to the district court was that a school district is a "public utility." Respondent admits that argument was frivolous and states that he dropped that argument on appeal. He had based the argument on a lay dictionary definition without considering that under existing Wyoming case law, a public utility is an entity engaged in the sale of defined types of commodities or services to or for the public, whereas a public school education is provided to all children for free under Wyoming's constitution. Respondent conditionally admits

21

that he had no authority or reasoned legal basis to argue a Wyoming public school is a public utility and that he made no good faith legal argument to modify, reverse or extend the law to treat a school as a public utility.

55.     Respondent argued before both the district court and the Wyoming Supreme Court that the courts should engage in balancing equities or should recognize new exceptions to immunity where the school district employees had engaged in acts that were akin to criminal misconduct or were in breach of written school district policies. Judge Cranfill held that these arguments were contrary to established precedent. The Wyoming Supreme Court ruled similarly stating that these were "obscure arguments," and were "directly contradicted by the WGCA and our case law interpreting the Act." 2018 WY 43 at ¶¶ 23-24 (citations omitted).

56.     Respondent asserts that when he filed the Verified Complaint, argued the motion to dismiss, and argued these theories before the Wyoming Supreme Court, he believed strongly, and still believes, that the defendants should be held liable for, and not enjoy immunity from, the consequences of their conduct that he believes injured his clients. While he still holds a strong belief in the rightness of his clients' cause, he recognizes now that his righteous zeal ran counter to the governing statute and that he failed to develop a plausible legal argument, supported by authority or persuasive reasoning, for recognition of a new exception to the defendants' immunity under the Act. He conditionally admits that the claims he pursued and arguments he made were not in accord with existing law and that he urged no good faith legal argument to modify, reverse or extend the law to recognize new exceptions to governmental immunity. He conditionally admits that he violated Rule 3.1(b).

57.     The Wyoming Supreme Court recognized in its opinion that if the school district employees had acted outside their "scope of duties," then the employees would not be immune

22

under the Wyoming Government Claims Act, but also found that Respondent did not plead such claims against the employees individually in the Verified Complaint. Respondent asserts that when advocating for his clients, he thought his pleading could be construed to include such claims. In hindsight he realizes that if his clients did have viable claims against the employees individually, he did not properly plead those claims. He admits that he never moved for leave of the district court to amend the Verified Complaint, that he did not object to a proposed order of dismissal with prejudice that Mr. Copenhaver sent him for review or approval, and that he also did not object to a proposed order of dismissal with prejudice that Judge Simpson served him, with an opportunity to object, before entry of the final order. He conditionally admits that by not properly pleading claims against the district employees individually for their conduct allegedly outside their "scope of duties" and by not seeking leave to amend to preserve those claims, Respondent violated his obligation of competent representation owed under Rule 1.1, W.R.P.C.

Case No. 2017-092 – Hostile Conduct Directed at Opposing Counsel

58.     A week after an attorney appeared as defense counsel in the Civil Lawsuit, Respondent filed a motion dated May 18, 2017, seeking to disqualify such defense counsel. He urged the Court as follows:

> [Defense counsel] represents both the Defendants... and also the Park County School District #6. Counsel for the plaintiffs is a member of the Park County School District #6. Therefore, [defense counsel] represents the attorney for the Plaintiffs and the Defendants in this matter.... [Defense counsel] has a torn allegiance in this matter. He is unable to represent the Defendants in this matter and *still hold a representation of the attorney for the Plaintiffs*. [Defense counsel] has specific knowledge of the Plaintiffs [sic] attorney by having an attorney client relationship with him. This adversely effects [sic] the Plaintiffs in this matter. (emphasis added).

59.     On June 5, 2017, Respondent sent an email to defense counsel about a *Cody Enterprise* article that purported to quote defense counsel concerning the Civil Lawsuit. Respondent asserted that defense counsel had violated the Rules of Professional Conduct by talking to the

press about confidential juvenile proceedings. He accused defense counsel of having committed a criminal violation by allegedly disclosing confidential information from juvenile proceedings. He accused defense counsel of making false and misleading statements to the press and implied defense counsel would have civil liability for this conduct. He closed the email with this statement: "I sincerely hope that you are able to account for these actions. I will await your reply before I am forced to take further action."

60.     Defense counsel promptly answered Respondent's accusations by a letter dated June 8, 2017. Defense counsel stated that he had declined to discuss any details of the case with the newspaper reporter, that the *Cody Enterprise* article was quoting from Defendants' Motion to Dismiss that defense counsel had been obliged to file publicly in response to the public allegations Respondent had filed against the Defendants, and that the news article had followed from Plaintiffs' (Respondent's clients') decisions to file the lawsuit publicly, not under seal, improperly disclosing the minor child's identity and the circumstances of the juvenile case. Defense counsel offered to meet with Respondent and the court to take steps to seal the case or make it confidential. Respondent never replied to Copenhaver's letter.

61.     Defense counsel filed Defendants' response to the motion to disqualify on June 8, 2017. He advised the court that neither defense counsel nor anyone in his law firm had ever represented Respondent in any individual or personal capacity and that Respondent had never sought, paid for, or been billed for services by the law firm, nor been defended in, or a party to, any matter the firm had worked on. Defense counsel concluded, "Merely because he is a member of a board represented by [defense counsel] does not give rise to an individual attorney-client relationship. . . Even if it did it has no relevance because Mr. Respondent is not a party to the pending litigation."

24

62. On June 20, 2017, Respondent asked for an executive session of the Park County School District No. 6 Board of Trustees. The contents of the executive session are confidential. Without waiving confidentiality of the communications that occurred, Respondent admits that he proposed in the executive session that Park County School District No. 6 terminate its longstanding relationship with defense counsel's law firm, and that among several reasons why he made that proposal was defense counsel's appearance to defend the Civil Lawsuit in which Respondent believed that defense counsel had a conflict of interest in appearing as opposing counsel to Respondent.

63. The Court heard oral argument on the motion to disqualify on June 23, 2017. Respondent persisted in asserting at oral argument that defense counsel was Respondent's attorney and therefore could not properly represent the Defendants in the Civil Lawsuit. After hearing oral argument, Judge Cranfill ruled from the bench, saying: "I disagree. [Defense counsel] represents the school board. I do not believe he represents you individually so that motion is denied."

64. Respondent conditionally admits that as a matter of law under Rules 1.7 and Comment [34], Rule 1.13(a) and Comment [1], W.R.P.C., when defense counsel or his law firm were engaged to represent the Board of Trustees of Park County School District No. 6, defense counsel and his firm were acting as a lawyer for the Board and not undertaking to represent Respondent as a Trustee in his individual capacity. Respondent also now understands that even if defense counsel had been Respondent's personal attorney, that status would not necessarily disqualify defense counsel from appearing as opposing counsel. Respondent conditionally admits that he failed to support the motion to disqualify with analysis necessary under Rule 1.7, W.R.P.C. to consider whether disqualification should be the result. Respondent conditionally admits that before he filed the motion to disqualify defense counsel, he failed to conduct proper

25

legal analysis, and as a result there was no basis in law for the motion to disqualify and that he had no good faith argument for the reversal, modification or extension of existing law to support the motion to disqualify. He conditionally admits that this conduct was in violation of Rule 3.1, W.R.P.C.

65. Respondent conditionally admits that the series of actions he took against defense counsel violated Rules 4.4 and 8.4, W.R.P.C., including his actions of (1) threatening that he would cause criminal, ethical or civil actions to be brought against defense counsel personally arising from the *Cody Enterprise* article, (2) moving to disqualify defense counsel as counsel with no good faith basis in law, and (3) using Respondent's official capacity as a Park County School District County School District No. 6 Trustee to seek to have defense counsel's firm terminated as counsel for Park County School District No.6.

Case Nos. 2017-055, 092 and 100

66. Respondent conditionally admits that several motions and briefs he filed with the district court and the Wyoming Supreme Court in the underlying cases contained an unacceptable number of errors of grammar, word choice, and punctuation, and that his writing skills in preparing several documents fell below reasonable standards of competence for a lawyer practicing in Wyoming courts, all in violation of his obligations under Rule 1.1, W.R.P.C.

Summary of Conditionally Admitted Violations

67. In summary, in the lawsuit underlying Case 2017-055, Respondent conditionally admits that he failed to meet discovery obligations, failed to follow applicable rules of civil procedure, failed to comply with orders of the court, failed to diligently or competently prepare to try his client's lawsuit, and sought to delay the trial by motions he filed that contained inaccurate representations of fact and were not supported by good faith legal arguments. Respondent

26

conditionally admits that in the course of his conduct in that underlying lawsuit he violated W.R.P.C. Rules 1.1, 1.3, 3.1, 3.2 and 3.4.

68.     Respondent conditionally admits that in the civil lawsuit that gave rise to Cases 2017-092 and 2017-100, he failed to properly consider and clear conflicts of interest, improperly disclosed the identity of a minor child, advocated frivolous claims and positions, failed to properly plead claims that might have survived dismissal, and made improper threats and took hostile actions against opposing counsel. He conditionally admits that his conduct in the civil lawsuit violated W.R.P.C. Rules 1.1, 1.3, 1.7, 3.1, 3.4(c), 4.4 and 8.4(d). Respondent also conditionally admits that he neglected to timely file an Appellants' Brief in a related juvenile case and that the brief he filed was not competently prepared resulting in dismissal of the appeal, in violation of his obligations under W.R.P.C. Rules 1.1 and 1.3. Finally, Respondent admits that he failed to respond to letters and requests for information from Special Bar Counsel in violation of W.R.P.C. Rule 8.1 and W.R.D.P. Rule 8(a).

69.     Respondent agrees that the imposition of a 30-month disciplinary suspension effective January 31, 2019, is an appropriate sanction for the professional misconduct Respondent conditionally admits having committed.

Determination of the Appropriate Sanction for Respondent's Misconduct

70.     The Panel finds, in determining the appropriate sanction for Respondent's violations of Rule 1.1, that Respondent violated duties owed to his clients. Pursuant to ABA Sanction Standard 4.5, the Panel finds that Respondent engaged in an area of practice in which Respondent knew he was not competent and caused injury or potential injury to the affected clients. The presumptive sanction for such misconduct is suspension.

27

71. The Panel finds, in determining the appropriate sanction for Respondent's violations of Rule 1.3, that Respondent violated duties owed to his clients. Pursuant to ABA Sanction Standard 4.4, the Panel finds that Respondent knowingly failed to perform services for the affected clients and caused injury or potential injury to the affected clients. The Panel further finds that Respondent engaged in a pattern of neglect and caused injury or potential injury to a client. The presumptive sanction for such misconduct is suspension.

72. The Panel finds, in determining the appropriate sanction for Respondent's violations of Rule 1.7, that Respondent violated duties owed to his clients. Pursuant to ABA Sanction Standard 4.3, the panel finds that Respondent knew of a conflict of interest and did not fully disclose to the affected clients the possible effect of the conflict and caused injury or potential injury to the affected clients. The presumptive sanction for such misconduct is suspension.

73. The Panel finds, in determining the appropriate sanction for Respondent's violations of Rules 3.1, 3.2 and 3.4, that Respondent violated duties owed to the legal system. Pursuant to ABA Sanction Standard 6.2, the Panel finds that Respondent knew that he was violating various court rules and orders, caused injury or potential injury to a client or a party, and caused interference or potential interference with a legal proceeding. The presumptive sanction for such misconduct is suspension.

74. The Panel finds, in determining the appropriate sanction for Respondent's violations of Rules 4.4 and 8.4, that Respondent violated duties owed to the public. Pursuant to ABA Sanction Standard 5.2, the Panel finds that Respondent, while he was a school board member, knowingly failed to follow proper procedures or rules, and caused injury or potential injury to the integrity of the legal process. The presumptive sanction for such misconduct is suspension.

28

75.     The Panel finds, in determining the appropriate sanction for Respondent's violations of Rule 8.1, that Respondent violated a duty owed as a professional. Pursuant to ABA Sanction Standard 7.2, the Panel finds that Respondent knowingly engaged in conduct that is a violation of a duty owed as a member of the Wyoming State Bar and caused injury or potential injury to the legal system. The presumptive sanction for such misconduct is suspension.

76.     With respect to Respondent's mental state, the Hearing Panel finds that Respondent acted with knowledge; that is, Respondent acted with conscious awareness of the nature or attendant circumstances of his conduct but without the conscious objective or purpose to accomplish a particular result.

77.     The Hearing Panel finds that Respondent inflicted actual injury upon his clients and the legal system.

78.     With respect to ABA Standard 9.22, the Hearing Panel finds the following aggravating factors:

    9.22(a) Prior disciplinary offenses. The Review and Oversight Committee ("ROC") imposed, and Respondent accepted, a March 2018 private reprimand. Comparison of the findings in that case show that the conduct for which Respondent was privately reprimanded by the ROC is markedly similar to his admitted misconduct in Case No. 2017-055.

    9.22(c) A pattern of misconduct.

    9.22(d) Multiple offenses.

    22(e) Failing to cooperate with Special Bar Counsel.

79.     Mitigating factors are:

    a.      Respondent was relatively inexperienced in the private practice of law and in civil litigation; his previous experience was mostly in juvenile proceedings as a deputy county attorney.

    b.      Respondent experienced personal financial problems after entering into private practice, causing considerable stress which has affected his judgment.

29

c. Respondent experienced emotional problems after entering private practice.

d. Respondent's misconduct does not appear to have resulted from dishonest or selfish motives.

e. Respondent served during the events at issue as a volunteer elected member of the Board of Trustees of Park County School District No. 6, and continued his service as a member of the Wyoming National Guard where he has served more than 20 years. Respondent was deployed overseas for a month during April – May 2017 when some of the events of misconduct occurred. Those public and military service responsibilities exacerbated Respondent's financial and other personal problems contributing to his inability to properly manage his practice and his case load.

f. Respondent acknowledged that he should try to find a new line of work, has voluntarily ceased practice, and has recently expressed remorse.

80. The aggravating factors, in particular the multiple serious offenses suggesting an overall lack of competence. However, the Panel finds that the mitigating factors carry more weight, in particular, Respondent's personal problems, his voluntary cessation of practice, and his cooperation in entering into the stipulations now at hand. Additionally, the multiple serious offenses can be considered in setting the length of the suspension. Taken together, the scope and nature of the conditionally admitted violations raise a serious issue regarding Respondent's overall competence to practice law. The parties agree that the Panel should focus its consideration primarily on ABA Standard 4.5, "Lack of Competence."

81. Respondent's course of conduct raises a question of whether Respondent understands the most fundamental legal doctrines or procedures. However, Respondent was apparently successful in a prior field of practice (juvenile matters as a deputy county attorney), and his pattern of misconduct may result in part from a relatively recent transition to new areas of private practice. For these reasons, the Panel approves and recommends to the Court that a lengthy period of suspension is the appropriate presumptive sanction under the ABA Standards, subject to

consideration of aggravating and mitigating factors. In applying the foregoing standards to Respondent's conduct, the Panel finds that the 30-month suspension to which the parties have stipulated is an appropriate sanction for Respondent's professional misconduct.

82.     As Respondent has conditionally admitted, Respondent failed to deliver competent service. Rule 1.1 mandates that a lawyer must practice competently. The public expects competence. Allowing incompetent practice to continue without sanction would leave the public at risk, tarnish the bar's reputation, and harm bar members who deliver competent service. For these reasons, and considering the broad array of other ethical breaches by Respondent, the Panel finds that it is important to issue an order of suspension, albeit effective January 30, 2019 (the date of Respondent's transfer to disability inactive status), in order to ensure accountability for such misconduct.

83.     If the Court issues an order of suspension in accordance herewith, Bar Counsel and Respondent agree to the following press release:

> The Wyoming Supreme Court has issued an order of suspension for attorney William K. Struemke, retroactively effective January 30, 2019, for a period of 30 months. The suspension followed a pattern of professional misconduct, including filing frivolous lawsuit claims, submitting inadequately prepared briefs, missing discovery and filing deadlines, failing to properly clear conflicts of interest, and not competently or diligently preparing for trial. Additionally, Mr. Struemke was cited for failing to comply with court rules and orders in several cases.

> In 2018, prior to the suspension's imposition, Mr. Struemke voluntarily agreed to be placed on disability inactive status. As part of this agreement, it was determined that the 30-month disciplinary suspension would be applied retroactively if and when Mr. Struemke chose to return to the active practice of law. In order to return, Mr. Struemke was further ordered to address certain court-ordered conditions during his disability inactive status.

> Mr. Struemke petitioned for reinstatement from disability inactive status in 2023. The Office of Bar Counsel supports his petition, acknowledging that Mr. Struemke had successfully fulfilled all the conditions required during his inactive status and had provided clear and convincing evidence of his fitness to resume the active practice of law. These recommendations were reviewed and approved by

31

the Board of Professional Responsibility (BPR) and subsequently adopted by the Wyoming Supreme Court.

In addition to his reinstatement, Mr. Struemke was ordered to pay an administrative fee of $2,250.00, representing $750.00 for each of the three disciplinary complaints filed against him, along with $50.00 in costs to the Wyoming State Bar.

Mr. Struemke's reinstatement marks the conclusion of a thorough process involving the Wyoming State Bar and multiple professionals, and he has been cleared to return to the active practice of law, having demonstrated his commitment to rectifying past issues.

<u>Findings Justifying Respondent's Reinstatement to Active Status</u>

84.     Respondent filed a petition for reinstatement on April 23, 2024. Respondent's petition is accompanied by reports from two licensed psychologists prepared in February 2024 attesting to Respondent's fitness to practice law.

85.     Based upon these reports and the other evidence submitted by Respondent with his new petition for reinstatement, Bar Counsel stipulates that Respondent has met his burden of showing that he has demonstrated sufficient recovery from the physical, mental or emotional infirmity or illness giving rise to the transfer to disability inactive status and Respondent possesses all of the qualifications required of applicants for admission to the Wyoming State Bar. *See* Rule 23(c), W.R.D.P.

86.     Respondent is current on payment of annual license fees; Respondent is compliant with all continuing legal education requirements; Respondent has taken and passed the MPRE; and Respondent has taken and passed a college writing class. The Panel recommends that he be reinstated to active status.

<u>Conclusions of Law</u>

87.     Rule 1.1, W.R.P.C., states, "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

32

88.     Rule 1.3, W.R.P.C., states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

89.     Rule 1.7, W.R.P.C., provides in relevant part:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    (1) the representation of one client will be directly adverse to another client; or
    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

90.     Rule 3.1, W.R.P.C., states,

(a) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

(b) The signature of an attorney constitutes a certificate by him that he has read the pleading, motion, or other court document; that to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

91.     Rule 3.2, W.R.P.C., states, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

92.     Rule 3.4, W.R.P.C., provides in pertinent part, "A lawyer shall not: *** (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists; [or] (d) in pretrial procedure, make a frivolous discovery

33

request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party ***."

93.    Rule 4.4, W.R.P.C., provides in pertinent part, "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."

94.    Rule 8.1, W.R.P.C., provides in pertinent part, "[A] lawyer *** in connection with a disciplinary matter, shall not *** knowingly fail to respond to a lawful demand for information from *** [a] disciplinary authority."

95.    Rule 8.4 W.R.P.C., provides in pertinent part, "It is professional misconduct for a lawyer to *** (d) engage in conduct that is prejudicial to the administration of justice; (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law ***"

96.    Rule 15(b)(3)(D), W.R.D.P., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

(i)   Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
(ii)  Whether the lawyer acted intentionally, knowingly, or negligently;
(iii) The amount of the actual or potential injury caused by the lawyer's misconduct; and
(iv)  The existence of any aggravating or mitigating factors."

97.    Violations of Rules 1.1 (competence) and 1.3 (diligence) implicate ABA Standard 4.4, "Lack of Diligence," of the ABA Standards for Imposing Lawyer Sanctions. Standard 4.4 sets forth the following guidelines:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in

34

cases involving a failure to act with reasonable diligence and promptness in representing a client:

4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
(b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42 Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
(b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client.

4.43 Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

4.44 Admonition [i.e., "private reprimand" under Rule 9(a)(4) of the Rules of Disciplinary Procedure] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

98. Respondent's violation of Rule 1.7(a) (conflict of interest) implicates ABA Standard 4.3, "Failure to Avoid Conflicts of Interest," which provides:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:

4.31 Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):
(a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or
(b) simultaneously represents clients that the lawyer knows have adverse interests with intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or
(c) represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.

35

4.32     Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.33     Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.D.P.] is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

4.34     Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.D.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.

99.     Respondent's violations of Rules 3.1(a) (meritorious claims and contentions), 3.2 (duty to expedite litigation) and 3.4 (fairness to opposing party and counsel) fall under ABA Standard 6.2:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:

6.21     Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

6.22     Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

6.23     Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.D.P.] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

6.24     Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.D.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

100.     Respondent's violation of Rules 4.4 and 8.4 fall under ABA Standard 5.2:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving public officials who engage in conduct that is prejudicial to the administration of justice or who state or imply an ability to influence improperly a government agency or official:

5.21 Disbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses the position with the intent to obtain a significant benefit or advantage for himself or another, or with the intent to cause serious or potentially serious injury to a party or to the integrity of the legal process.

5.22 Suspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

5.23 Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.D.P.] is generally appropriate when a lawyer in an official or governmental position negligently fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

5.24 Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.D.P.] is generally appropriate when a lawyer in an official or governmental position engages in an isolated instance of negligence in not following proper procedures or rules, and causes little or no actual or potential injury to a party or to the integrity of the legal process.

101. Regarding a lawyer's mental state, preamble to the ABA Standards for Imposing Lawyer Sanctions (the "ABA Standards") includes the following discussion:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

102. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a

37

client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

103.    ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1     *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2     *Aggravation*

    9.21    *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

    9.22    *Factors which may be considered in aggravation.* Aggravating factors include:
    (a)  prior disciplinary offenses;
    (b)  dishonest or selfish motive;
    (c)  a pattern of misconduct;
    (d)  multiple offenses;
    (e)  bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
    (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
    (g)  refusal to acknowledge wrongful nature of conduct;
    (h)  vulnerability of the victim;
    (i)   substantial experience in the practice of law;
    (j)   indifference in making restitution; and
    (k)  illegal conduct, including that involving the use of controlled substances.

9.3     *Mitigation.*

    9.31    *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

    9.32    *Factors which may be considered in mitigation.* Mitigating factors include:
    (a) absence of a prior disciplinary record;
    (b) absence of a dishonest or selfish motive;
    (c) personal or emotional problems;
    (d) timely good faith effort to make restitution or to rectify consequences of misconduct;
    (e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
    (f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4     *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

## Recommendation

Based upon the foregoing findings of fact and conclusions of law, the Hearing Panel recommends that the Court:

(1) Reinstate Respondent to active status;

(2) Impose a 30-month disciplinary suspension of Respondent, retroactively effective January 30, 2019;

(3) Order Respondent to pay an administrative fee of $2,250.00 ($750.00 per complaint as required by Rule 25, W.R.D.P.), plus costs of $50.00;

(4) Authorize publication of the stipulated press release set forth above; and

39

(5) Order that Respondent not be required, under the special circumstances of this case, to petition for reinstatement following his disciplinary suspension as set forth in Rule 22, W.R.D.P.

Dated this 22nd day of October, 2024.

Bradley T. Cave
Review Panel Chair
Board of Professional Responsibility
Wyoming State Bar